FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DESIREE C.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 4:17-CV-05101-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 13. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II and her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

# I.  Jurisdiction

Plaintiff filed her application for Disability Insurance Benefits and her application for Supplemental Security Income on August 1, 2013. AR 242-51. Her alleged onset date of disability is January 1, 2010. AR 242, 246. Plaintiff's applications were initially denied on November 25, 2013, AR 171-87, and on reconsideration on February 7, 2014, AR 190-99.

A hearing with Administrative Law Judge ("ALJ") Ilene Sloan occurred on September 17, 2015. AR 35-75. On November 4, 2015, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 17-28. The Appeals Council denied Plaintiff's request for review on May 19, 2017, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on July 18, 2017. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 22 years old at the alleged date of onset. AR 26, 242, 246. She has at least a high school education and is able to communicate in English. AR 21, 26. Plaintiff has past work as a fast food worker. AR 26.

### V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from January 1, 2010, through the date of the ALJ's decision. AR 17, 27, 28.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2010 (citing 20 C.F.R. §§ 404.1571 *et seq*., and 416.971 *et seq*.). AR 19.

**At step two**, the ALJ found Plaintiff had the following severe impairments: bipolar II; generalized anxiety disorder; lumbar spondylosis; and obesity (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 19.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 20.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform light work, except: she can frequently climb ramps and stairs but occasionally climb ladders, ropes, and scaffolds; she can frequently balance and stoop; she has an unlimited ability to kneel, crouch, and crawl; she must avoid concentrated exposure to vibration and fumes, odors, dusts, gases, and poor ventilation; she must avoid concentrated exposure to hazards; she is able to understand, remember, and carry out simple tasks; she cannot perform tandem tasks or tasks involving cooperative team effort; she is able to have occasional, superficial contact with coworkers; she can have no contact with the general public; there should be no requirement to read detailed or complex instructions or write reports and no requirement to do detailed or complex math calculations (e.g.

teller or cashier); she is able to work in an environment defined in the Selected

Characteristics of Occupations and defined in the Revised Dictionary of

Occupational Titles as very quiet to moderate. AR 21-22.

The ALJ found that Plaintiff in unable to perform her past relevant work.

AR 26.

**At step five**, the ALJ found, in light of her age, education, work experience,

and residual functional capacity, there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform. AR 26-27. These include

mailroom clerk, routing clerk, and marking clerk. AR 27.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error

and not supported by substantial evidence. Specifically, she argues the ALJ erred

by: (1) failing to include severe impairments at step two; (2) improperly

discrediting Plaintiff's subjective complaint testimony; (3) improperly evaluating

the medical opinion evidence; and (4) and failing to identify jobs, available in

significant numbers, that Plaintiff could perform despite her functional limitations.

\\

\\

\\

\\

**VII. Discussion**

**A.     The ALJ did not err at step two of the sequential evaluation process.**

Plaintiff contends that the ALJ erred by failing to find that she had additional severe impairments at step two of the five-step sequential evaluation process of ADHD, PTSD, depression, intractable common migraine headaches, lumbar radiculopathy, and sacroiliitis. ECF No. 12 at 15.

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Under step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified

psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d). Importantly however, a diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). An alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and must be established by medical evidence not only by a plaintiff's statements regarding his symptoms. 20 C.F.R. §§ 404.1508, 416.908.

Plaintiff argues the ALJ should have found her to have a severe impairment of learning disorder and ADHD. ECF No. 12 at 15. However, apart from her own subjective complaints of ADHD, there is only a single diagnosis of ADHD in the record. AR 459. The ALJ also discounted this diagnosis because it is based solely on Plaintiff's subjective statements and not on any objective testing or results, which is a proper reason to discount a medical provider's opinion. AR 25. Additionally, the only limitation in the opinion is that it will make it challenging for Plaintiff to get her GED, but Plaintiff did get her GED. AR 21, 26, 459. As there is no acceptable diagnosis and no limitations associated with this alleged impairment that are not accounted for in the residual functional capacity assessment, the ALJ did not err by not finding it severe at step two.

Next, Plaintiff alleges with no citation or support of any kind, that the ALJ erred by not finding her to have a severe impairment of PTSD. ECF No. 12 at 15. However, there is no indication in the record that Plaintiff has ever previously alleged any sort of PTSD impairment and the record is devoid of any diagnosis establishing PTSD or any limitations associated with such and impairment. As such, the ALJ did not err in not finding PTSD to be a severe impairment at step two.

Without any support for her contention, Plaintiff briefly alleges that she should have been found to have a severe impairment of depression. *Id*. However, Plaintiff merely cites to one diagnosis of depression and associates no limitations with the diagnosis. *Id*. Importantly, the ALJ specifically found that Plaintiff's depression is controlled with behavior modification and she has generally been appropriate without any issue. AR 19. Impairments that can be controlled with treatment are not disabling. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). This finding is supported by the record and is uncontested by Plaintiff. As there are no unaccounted for limitations associated with this impairment, the ALJ did not err at step two in not finding it to be severe.

Plaintiff's allegation that the ALJ should have found her to have a severe impairment of intractable common migraine headaches also fails. Apart from

limited subjective complaints of migraine headaches, the record is devoid of reference to migraine headaches or any objective limitations associated with the impairment or any treatment for the alleged impairment. Thus, the ALJ did not err in not finding migraines to be a severe impairment at step two.

Plaintiff briefly cites to one assessment of sacroiliitis to support her brief allegation that the ALJ erred by not finding this to be a severe impairment at step two. ECF No. 12 at 15; AR 1017. However, Plaintiff's allegation and the record are devoid of any unaccounted for limitations associated with this impairment. As such, the ALJ did not err in not finding it to be a severe impairment at step two.

Lastly, Plaintiff alleges the ALJ erred by not finding her lumbar radiculopathy to be a severe impairment at step two. ECF No. 15. Plaintiff points to a number of her subjective complaints in the record and concern for, or assessments of, lumbar radiculopathy, but fails to note any objective limitations associated with this impairment assessed by medical professionals or that have not already been accounted for by the ALJ in the residual functional capacity. *Id*. Absent proof of limitations affecting Plaintiff's ability to perform basic work activities an impairment is not considered severe. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881,

885 (9th Cir. 2011). Thus, the ALJ did not err in not finding this to be a severe impairment at step two.

Furthermore, because Plaintiff was found to have at least one severe impairment, this case was not resolved at step two. Thus, any error in the ALJ's finding at step two is harmless, if all impairments, severe and non-severe, were considered in the determination Plaintiff's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity). While Plaintiff argues that the ALJ erred by failing to find additional impairments severe at step two, Plaintiff does not describe any additional limitations that were not included by the ALJ in assessing her residual functional capacity. Here, the ALJ specifically noted that she considered *all symptoms* in assessing the residual functional capacity. AR 22 (emphasis added). The ALJ accounted for Plaintiff's symptoms when limiting her to a limited form of light work, including additional limitations in moving and bending, and additional limitations in mental functioning, following directions, and contact with other people. AR 21-22. Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.

\\

## B. The ALJ properly evaluated Plaintiff's subjective complaints.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms

Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 22. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 22-24.

First, the ALJ noted multiple inconsistencies with the medical evidence. AR 24, 30. This determination is supported by substantial evidence in the record. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Additionally, an ALJ may also find a claimant's symptom testimony not credible based on evidence of effective responses to treatment or when Plaintiff is not following treatment without a good reason. *See*, *e.g.*, *Burch*, 400 F.3d at 681; *Molina*, 674 F.3d at 1114*; Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3).

Plaintiff alleges completely debilitating mental limitations and an inability to be around anyone else. *See* AR 22. However, the record does not support the level of mental health difficulties she alleges. The treatment and exams in the record regularly note that Plaintiff exhibits appropriate mood, affect, and demeanor; her

memory is intact, her thought process, content, memory, judgment, insight, and concentration are all within normal limits; she reports doing well; and her mood, anxiety, and depression are all well controlled with medication and behavior modification. *See* AR 23, 435, 437, 592, 594, 619-20, 622-23, 634, 650, 682-83, 721-22. Additionally, the ALJ noted that Plaintiff has a much greater ability to be around others than she alleges. AR 24. Plaintiff has been able to maintain a long-term relationship with her boyfriend and his children, she attends events such as football games with her boyfriend's children, she goes to the gym, she uses public transportation, she spends time with friends, she can travel without issue, she traveled and spent time at Silverwood Theme Park, and she attended the Apple Cup college football game without issue. *Id*.

Plaintiff also alleges completely debilitating physical limitations; however, her physical examinations generally suggested she was not as limited as she alleged, including treatment and exam notations that are generally unremarkable, finding grossly intact motor skills and full strength, ability to rise unassisted, no complaints of lower extremity weakness or numbness, normal gait and station, and a full range of motion in her spine. *See* AR 635-36, 651, 683, 773, 977, 1017, 1021. As noted by the ALJ, the record does include more severe physical limitations when Plaintiff overexerts herself and does not follow treatment, such as, increased back pain after a snowboard accident, physical training against the

advice of her trainer, engaging in significant exertion to help her gym move equipment from one facility to another, and she failed six weeks of physical therapy and six weeks of activity modification. AR 716, 723, 731, 740, 757.

Next, the ALJ found that Plaintiff's allegations of completely disabling limitations are belied by her actual level of activity. AR 24. These include her ability to maintain a long-term relationship with her boyfriend and his children, attend events such as football and basketball games with her boyfriend's children, regularly go to the gym, use public transportation, spend time with friends, travel without issue, travel to and spend days at Silverwood Theme Park, attend the Apple Cup college football game, go fishing and on walks, spend time at church, attend school, and do household chores such as laundry and cooking. *See* AR 24. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ reasonably found that Plaintiff's daily activities contradict her allegations of total disability. The record supports the ALJ's determination that Plaintiff's conditions are not as limiting as she alleges.

Lastly, the ALJ specifically noted inconsistent statements. AR 24. An ALJ may rely on ordinary techniques of credibility evaluation such as a witness's prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039. The ALJ noted that while Plaintiff testified that she has never gone snowboarding, the medical evidence shows that she has actually been snowboarding and had an accident doing so that exacerbated her condition. AR 24. Plaintiff also testified that she could not deal with other people and stated that she had conflicts and arguments with other employees, but the record shows that this argument was a one-time situation involving the theft of some money. *Id*.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

\\

\\

## C. The ALJ properly assessed the medical opinion evidence.

### a. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than

his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Additionally, "other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

### b. Tae-Im Moon, Ph.D.

Dr. Moon is an examining doctor who completed evaluations for the Department of Social and Health services in October 2009, June 2013, and May 2015. AR 454-59, 574-78, 615-620. Dr. Moon opined in his later two evaluations that Plaintiff has marked limitations in the ability to understand, remember, and persist in tasks by following detailed instructions; learn new tasks; communicate and perform effectively in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting. AR 576-577, 617-618.

The ALJ did not completely reject Dr. Moon's opinion, but afforded the opinion only little weight. AR 25. The ALJ provided multiple valid reasons supported by the record for discounting this opinion. *Id*. First, the ALJ noted that all three of these opinions consist of check-box forms with no explanation for the opinions or limitations provided. AR 25. Check-box form statements may be given less weight because they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). As Dr. Moon's forms provided no explanation for the opined limitations, this is a valid reason for assigning the opinion little weight.

Second, the ALJ noted that the severity of the limitations in the opinion are not supported by, and directly at odds with, Dr. Moon's own findings. AR 25. Despite the severe limitations, Dr. Moon found the Plaintiff was cognitively intact, her memory and concentration were within normal limits, she had normal comprehension, her though process and content where unremarkable, her speech was normal and she made good eye contact, she was able to follow the conversation and perform a three-step instruction, and she interacted appropriately

across all of the examinations. AR 25, 452-53, 577-78, 619-20. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

Third, the ALJ found that the limitations in Dr. Moon's opinion were also inconsistent with the longitudinal medical record. AR 25. The treatment and exams in the record regularly note that Plaintiff exhibits appropriate mood, affect, and demeanor; her memory is intact, her thought process, content, memory, judgment, insight, and concentration are all within normal limits; she reports doing well; her mood, anxiety, and depression are all well controlled with medication and behavior modification, and she is able to perform appropriately around others. *See* AR 23, 435, 437, 592, 594, 619-20, 622-23, 634, 650, 682-83, 721-22. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Lastly, the ALJ discounted Dr. Moon's diagnosis of ADHD and a learning disorder as it is based solely on Plaintiff's self-reports and is not supported by any testing. AR 25. An ALJ may discount a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in her consideration of Dr. Moon's opinion.

### c. Wayne M. Kohan, M.D.

Plaintiff briefly argues that the ALJ completely missed or ignored the opinion of her treating doctor, Dr. Kohan. ECF No. 12 at 12. In the progress notes following a meeting with Plaintiff, Dr. Kohan noted that Plaintiff's functioning was intact and normal in all areas tested and wrote: "I think she needs more workup for determination of what can be fixed and what won't get fixed and I recommend appointment with rheumatology. Until that time, I do not think she will be employable due to frequent migraines and back pain. I gave her a prescription for hydrocodone and will not refill since I am not her treating physician." AR 443-44.

However, Dr. Wayne's equivocal statements and reliance on others for the determination of disability does not constitute an opinion by an acceptable medical

source. The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Wayne's statement contains no mention of a specific severity, Plaintiff's prognosis, what Plaintiff can still do despite her impairments, or her physical or mental restrictions. Thus, the ALJ had no duty to address this brief statement and did not err by not doing so.

### d. Kelli Campbell, ARNP

Kelli Campbell is an advanced registered nurse practitioner who opined in August 2015, that Plaintiff's depression and anxiety was worsening and she would miss four or more days of work per month. AR 1024-25. The opinion of Ms. Campbell falls under the category of "other sources," and the ALJ must give germane reasons for discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ gave multiple valid reasons for assigning little weight to Ms. Campbell's opinion. AR 25-26. First, the ALJ noted that the opinion is inconsistent with the medical evidence. AR 25. Apart from the record regularly stating Plaintiff acted appropriately, with normal and intact functioning, and controlled depression with medication and behavior modification, the ALJ also specifically pointed out that Ms. Campbell's opinion in August 2015 that Plaintiff's depression and anxiety

were worsening is directly contradicted by Plaintiff's July 2015 PHQ-9 score of 0, indicating no depression symptoms and she was negative for anxiety, and Plaintiff was again negative for anxiety and depression in the same month of this opinion, August 2015. *See* AR 25, 435, 437, 452-53, 577-78, 592, 594, 619-20, 622-23, 634, 650, 682-83, 721-22. Ms. Campbell also noted daily back pain, but Plaintiff stated that 75% of her pain symptoms were controlled with her current therapy. AR 25, 1024-1025. Inconsistency with medical evidence is a germane reason to discount statements from other sources. *See Bayliss v.*, 427 F.3d at 1218. An ALJ may reject even a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603.

The ALJ also discounted this opinion because it is conclusory with no explanation to support the limitations, specifically as to why Plaintiff would miss four or more days of work per month. AR 26. An ALJ need not accept the opinion of even a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in her consideration of Ms. Campbell's opinion.

### e. Debra Baritelli, ARNP

Debra Baritelli is an advanced registered nurse practitioner who opined in April 2010 that Plaintiff was limited to sedentary work at that time and opined in August 2011 that Plaintiff could stand for four to six hours in and eight-hour workday, sit for eight hours in and eight-hour workday, lift ten pounds occasionally and five pounds frequently. AR 400-01, 404-05. The opinion of Ms. Campbell falls under the category of "other sources," and the ALJ must give germane reasons for discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ gave multiple valid reasons for assigning little weight to Ms. Baritelli's opinion. AR 25-26. First, the ALJ discounted this opinion Ms. Baritelli provided minimal objective findings or explanation in support of her opinion, citing only some decreased range of motion in Plaintiff's ankle. AR 24. Plaintiff argues that the ALJ could have found some objective support for the opinion in the record, but does not contest that Ms. Baritelli did not provide support for her opinion. An ALJ need not accept the opinion of even a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. The ALJ need not find and rely on separate support for an opinion in

the record, especially when there is evidence in the record that is inconsistent with the level of impairment in the opinion. "[T]he ALJ [who] is the final arbiter with respect to resolving ambiguities in the medical evidence," determined that the objective findings did not support the limitations Ms. Baritelli assessed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Additionally, Ms. Baritelli's opinion was properly afforded little weight because the assessment applied only for three months and therefore does not satisfy the twelve-month durational requirement. AR 400; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in her consideration of Ms. Baritelli's opinion.

**D. The ALJ did not err at step five of the sequential evaluation process.**

Plaintiff briefly argues that the resulting step five finding did not account for all of her limitations. The Court disagrees. The ALJ specifically stated that all symptoms consistent with the medical evidence were considered in assessing

Plaintiff's residual functional capacity. AR 22. The record shows the ALJ did account for the objective medical limitations, so the Court finds no error. Additionally, the ALJ need not specifically include limitations in the hypothetical if they are adequately accounted for in the residual functional capacity. *See Stubbs-Danielson*, 539 F.3d 1169, 1173-76 (9th Cir. 2008). The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Id.* at 1175-76.

The ALJ properly framed the hypothetical question addressed to the vocational expert. Additionally, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of the Plaintiff. Thus, the Court finds the ALJ did not err in assessing Plaintiff's residual functional capacity and the ALJ properly identified jobs that Plaintiff could perform despite her limitations.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 21st day of September, 2018.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge